Chatsworth Stations, Inc. v. Commissioner.
Chatsworth Stations, Inc. v. Commissioner
Docket No. 58936.
United States Tax Court
T.C. Memo 1964-11; 1964 Tax Ct. Memo LEXIS 324; 23 T.C.M. (CCH) 53; T.C.M. (RIA) 64011; January 24, 1964
*324 Alvin Wayne, for the petitioner. William F. Chapman, for the respondent. MURDOCK
Memorandum Opinion MURDOCK, Judge: The Commissioner determined deficiencies of $20,101.55 and $5,727.30 in the income tax of the petitioner for its fiscal years ended March 31, 1950 and 1951. The issues presented were decided by this Court in . One holding was that the petitioner had acquired the going business of each of four service stations and immediately sold each of those rights to a touant without profit. The Commissioner had determined that the amount thus received from the tenants represented rent, in addition to the amounts designated as rent. The Commissioner appealed and the United States Court of Appeals for the Second Circuit reversed and remanded the case, on this one issue, for further proceedings in conformity with its majority opinion written by . The petitioner did not operate any gas station and none was operated under its name. It had arrangements with several leading oil companies under which it could obtain gasoline at several cents under the posted dealers' prices, that is the posted *325 prices which the operator of a service station would have to pay the oil company if dealing directly. It was thus the intent of the petitioner to obtain retail stations, lease them to tenants, charge the tenant the posted dealers' prices and profit by this favorable differential in prices. It purchased two stations and obtained leases on two others during the taxable years. It purchased the Fort Hamilton station from Chanin for $105,000. Hacker, an officer of the petitioner who participated in the transaction, testified that, of this amount, $25,000 was what the sellers wanted for the going business of the gas station and the petitioner paid it plus $80,000 for the real estate, which included several stores. The petitioner had made arrangements previously to sell the going business to Vinacour for $25,000 and lease the station to him for 21 years at an annual rental of $5,100. The officers of the petitioner and Vinacour had thoroughly investigated the records and performance of this station before the purchase and lease. A broker who participated in these transactions confirmed the allocation of $25,000 of the purchase price to the good will or going business in a letter after the *326 completion of the transactions. Chanin and broker were not alive at the time of the trial. The petitioner purchased the Third Avenue station including the service station business, the good will, and equipment, from Sigmans for $25,750 and by previous agreement leased the station immediately to Pariser for 15 years at an annual rent of $1,800. Pariser paid, in addition, $4,500 for the good will or going business of that station. The petitioner purchased from the Certos the lease and good will of the Soundview station for $25,000 and immediately subleased the station to the Sigmans without change in the rent. The Sigmans also agreed to pay the petitioner $16,000 for the going business. $10,000 of this amount was to be paid in monthly installments. The lease was for about 18 future years. The petitioner entered into a ten-year lease with Katz for the Grand Concourse station at a monthly rental of $1,500 and immediately sublet for the same period at the same rental to Gouirand who paid to the petitioner $17,500 for the good will or going business. The petitioner did not pay Katz anything for the lease or for the good will or going business. All four of these stations had been *327 in operation for a substantial period of time and their records and operations had been thoroughly investigated by officers of the petitioner. Hacker described their method of valuation of the good will or going business of each station based upon the gallons of gas pumped per month, the other items sold, the condition of the station and its equipment and the location. He participated in all of the transactions on behalf of the petitioner. The record does not justify doubt of his truthfulness but does not permit this Court to make any independent valuation of any item. The Commissioner and the petitioner were in agreement at the conclusion of the original trial that it is customary, in connection with the purchase or lease of a service station property in the New York area, to pay an amount for the going business, sometimes called "good will money," based upon the length of the lease, the gallons of gas pumped per month and the sales of other items, as shown by the station records. Commissioner's brief of January 2, 1958, requested findings 43 and 44. The only items here in controversy are the $25,000, $4,500, $16,000 [1] and $17,500 paid to the petitioners in the taxable years *328 by four different tenants, in accordance with written contracts. These amounts were agreed upon by the petitioner and the tenants as payments for the good will or going business of the stations separate from and in addition to the agreed amount for rent in each case. The evidence indicated that the amounts agreed to be paid as rent were reasonable in amount. The Commissioner agreed that payments for "good will" were customary. Hacker testified that the petitioner separately appraised the good will or going business in every acquisition and allocated all or a portion of the total payment to it. This item was expressly mentioned in two of the acquiring contracts. All four of the tenants paid substantial sums to the petitioner solely for this same item. There was no reason to disregard the evidence and this Court decided that the substantial amounts in question were paid to the petitioner by its tenants for the going business of the stations. A rehearing was held pursuant to the mandate on June 27, 1963, after which the parties were directed to file simultaneous briefs *329 and reply briefs. The taxpayer, having the burden of proof to overcome the determination of the Commissioner, is required by the rules of this Court to set forth in its main brief complete numbered statements of facts relied upon, with reference to the supporting evidence. The Commissioner filed his original brief but the petitioner did not file any original brief after the hearing on remand. It filed only a brief in reply to the Commissioner's brief and has not complied with the above stated rule requiring a statement of facts. The opinion, under which the remand was made, indicated dissatisfaction with the evidence in the original record for the purpose of sustaining the petitioner's burden of proof to overcome the presumption of correctness of the Commissioner's determination that all amounts received from tenants were rent. It referred to a lack of evidence to show that the parties from whom the properties on the leases were obtained had ever agreed to receive any specific amount for good will or going business. It mentioned other matters, requiring proof, which it said the Tax Court should consider upon remand. A vital question now is whether the evidence introduced at the hearing *330 upon remand supplies the missing facts referred to and deemed necessary by the Court of Appeals. The petitioner, as already mentioned, has not furnished this Court any statement of any pertinent facts which it deems established by the evidence introduced at the hearing on remand. It seems to think, as indicated in its reply brief, that the Commissioner had some burden of proof. The only evidence introduced at the hearing on the remand was additional testimony by Hacker. He had described the Fort Hamilton transaction at the original trial but merely stated that the negotiations in the other three transactions were basically the same. He described those more fully at the hearing upon remand. However, it is no clearer now than formerly that the other parties to the transactions, whereby the petitioner acquired the two properties and the two leases, agreed directly upon any values for good will or going business nor were any of the other inadequacies, mentioned by the Court of Appeals, remedied. Also it is clear that the petitioner paid nothing to Katz and whatever it received from Gouirand was ordinary income. This Court must now decide this case in the light of and in conformity with *331 the majority opinion of the Court of Appeals and the conclusion is that the entire record, as it now exists, does not meet the requirements of that opinion for overcoming the presumption of correctness attaching to the determination of the Commissioner that all of the four payments here in issue were taxable as rent. Decision will be entered under Rule 50. Footnotes
1. Not all of this amount was paid in the taxable years. The petitioner used an accrual method of accounting.↩